[Cite as *In re Roberts*, 2012-Ohio-4846.]



# Court of Claims of Ohio
## Victims of Crime Division

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

IN RE: CHRISTOPHER T. ROBERTS

CHRISTOPHER T. ROBERTS

       Applicant

Case No. V2011-60743

Commissioners:
Necol Russell-Washington, Presiding
William L. Byers IV
E. Joel Wesp

<u>ORDER OF A THREE-COMMISSIONER PANEL</u>

{¶1} On April 14, 2011, the applicant, Christopher Roberts filed a compensation application as the result of injuries he sustained on March 27, 2011. On August 1, 2011, the Attorney General issued a finding of fact and decision determining that the applicant was a victim of criminally injurious conduct however the award the applicant was granted was reduced by 15 percent since the applicant engaged in contributory misconduct at the time he was injured. The Attorney General's investigation revealed that the applicant willingly agreed to take a work place argument to the parking lot and engage in a fist fight. The applicant was granted an award in the amount of $203.89, which represented evidence replacement loss and reimbursement of attorney fees to obtain a civil protection order reduced by 15 percent.

{¶2} The applicant filed a request for reconsideration asserting that he did not engage in contributory misconduct. On August 19, 2011, the Attorney General rendered a Final Decision finding no reason to modify the initial decision. On September 12, 2011, the applicant filed a notice of appeal from the August 19, 2011 Final Decision of the Attorney General. Hence, a hearing was held before this panel of commissioners on April 4, 2012 at 10:00 A.M.

{¶3} The applicant, Christopher Roberts, and his attorney, Byron Potts, attended the hearing while Assistant Attorney General Matt Hellman appeared on behalf of the state of Ohio.

{¶4} The Attorney General asserted that Christopher Roberts voluntarily engaged in a fight with a co-worker and a 15 percent reduction of the award for contributory misconduct is proper based upon the facts of this case and legal precedent.

{¶5} The applicant contends he did not engage in contributory misconduct. The offender confronted him and when the applicant tried to resolve the situation, the offender attacked him with a box cutter and the applicant was only engaging in self-defense. Since the applicant did not voluntarily engage in an altercation his conduct does not constitute contributory misconduct.

{¶6} The Attorney General called Mahamed Jollah to testify via telephone. Mr. Jollah related on March 27, 2011 he was working at WalMart. He knew both the offender, Sheku Daffey, and the applicant. On the day in question he stated he observed both Mr. Roberts and Mr. Daffay arguing inside the store. A co-worker informed them to take their argument outside and the witness stated he was under the impression that both individuals wanted to fight. He stated he overheard Mr. Roberts say to Mr. Daffay if he wanted to fight they could fight now. At that time the two began to fight. At some point during the fight, Mr. Daffay pulled out his store issued box cutter and cut Mr. Roberts. Mr. Jollah related that while the fight was going on, another unidentified individual tried to physically break up the fight and Mr. Roberts began fighting with him also.

{¶7} Upon cross-examination, Mr. Jollah admitted that both he and Mr. Daffay were Africans but they had no personal relationship outside of work. Mr. Daffay told him a verbal argument had ensued between Mr. Daffay and Mr. Roberts inside of WalMart. Mr. Jollah left the store with both individuals and it was at that time he heard Mr. Roberts ask Mr. Daffay if he wanted to fight. Then Mr. Roberts raised his fists and Mr. Daffay cut him with a box cutter.

{¶8} On redirect examination, Mr. Jollah stated that the reason Mr. Roberts and Mr. Daffay left WalMart and went to the parking lot was for the purpose of fighting. Both the parties raised their hands as if to fight. Whereupon, the witness' testimony was concluded.

{¶9} The Attorney General next called Detective Patricia Dailey of the Columbus Police Department to testify. Detective Dailey stated she was called to investigate the incident that occurred on March 27, 2011 at WalMart. The detective related that Mr. Roberts chronicled that the dispute between himself and Mr. Daffay occurred when he was speaking to a female customer. Mr. Daffay became upset and confronted Mr. Roberts, threatened his life, and wanted to fight him then. Although Mr. Roberts was reluctant to fight he agreed to fight Mr. Daffay after work. Upon leaving work, Mr. Roberts was attempting to leave in his car when Mr. Daffay approached him, swung a knife at him and Mr. Roberts pushed Mr. Daffay once in self-defense.

{¶10} Mr. Daffay was apprehended at his residence and a box cutter knife was recovered. Mr. Daffay's recollection of the events were that Mr. Roberts started the fight by punching him in the eye. After Detective Dailey refreshed her memory by viewing a police summary marked State's Exhibit A, she stated that Mr. Daffay said after Mr. Roberts was cut he began punching someone else.

{¶11} The day after the incident, Detective Dailey interviewed Mark Carpenter, Mohamed Jollah, and Momoh Kamara at WalMart. Based upon her interviews with the witnesses she characterized the situation as one of mutual combat.

{¶12} Upon cross-examination, Detective Dailey conceded she could not determine who was the aggressor. However, two out of the three witnesses she interviewed described the fight as mutual conflict. Finally, the detective was unaware of the demeanor of the parties when they left WalMart. Furthermore, the detective had no evidence to dispute that Mr. Roberts was swinging at Mr. Daffay in self-defense.

{¶13} However, on redirect, the detective admitted Mr. Jollah's statements indicate that Mr. Roberts challenged Mr. Daffay.   Whereupon, the testimony of Detective Dailey was concluded.

{¶14} Christopher Roberts was called to testify.  He recalled on March 27, 2011, Mr. Daffay confronted him while he was working at WalMart, threatening to kill him.  Mr. Roberts believes this comment was germane to an incident which occurred earlier when a female customer who was talking to Mr. Daffay waved at Mr. Roberts.   At the end of his shift he walked to his car; not seeing Mr. Daffay he returned to the store and located Mr. Daffay to talk to him.   Mr. Roberts stated he did not challenge Mr. Daffay to a fight. He recounted that Mr. Daffay's words were aggressive and that he said he wanted to go where there were no cameras.   Mr. Roberts believed that Mr. Daffay wanted to go to a place where there were no cameras so they could have a conversation about why Mr. Daffay wanted to kill him.   At that point, a physical altercation occurred, Mr. Daffay swung wildly at him with a box cutter and missed, while Mr. Roberts swung at Mr. Daffay with his fists and hit him.   Mr. Daffay continued to swing at him with the box cutter until Mr. Roberts was cut.   Then Mr. Daffay walked away and Mr. Roberts became involved in a second fight with his friend Aaron.   Aaron was laughing about him being cut which resulted in a physical altercation with Aaron.

{¶15} Mr. Roberts testified that Mr. Jollah was not nearby when any conversations occurred at work.   He admitted that Jollah was with Mr. Daffay when they exited WalMart, but Mr. Jollah did not come to the area where the altercation occurred.

{¶16} Mr. Roberts asserts he never challenged Mr. Daffay to a fight and everything he did was for his self protection.

{¶17} Upon cross-examination, Mr. Roberts stated the only interaction he had with Mr. Daffay prior to the March 27, 2011 incident was on two prior occasions Mr. Daffay had threatened to kill him over a pallet jack and a box bailer.  He described a history of argumentative situations Mr. Daffay had with a variety of co-workers.

**{¶18}** Mr. Roberts detailed that Mr. Daffay threatened to kill him after an unidentified girl, who was talking to Mr. Daffay at the time, waved at him and called him by name. Mr. Roberts said he became so upset by this threat he was unable to continue working, communicated this threat to co-workers, but did not notify any managers about Mr. Daffay's threat. At the end of his shift instead of leaving he returned to the store to confront Mr. Daffay. He asked Mr. Daffay why he wanted to kill him. Mr. Daffay stated come over here where there are no cameras. Even though he interpreted Mr. Daffay's remark as "wanting to do so," he felt based on Mr. Daffay's history he would not do anything. At that point, Mr. Daffay became madder and madder until he pulled out the box cutter and swung wildly at him.

**{¶19}** Mr. Roberts admitted that Mohamed Jollah was walking with Mr. Daffay prior to the incident and might have been there when the incident occurred.

**{¶20}** The Attorney General questioned Mr. Roberts about WalMart's work place violence policy. Mr. Roberts acknowledged that the policy required employees to report threats and incidents of violence to a manager, and if there is immediate danger, to notify police and then report the incident to a manager. Mr. Roberts conceded that he did not report the threats or incidents to management and as a result was fired. Mr. Roberts believed he was fired because he did not leave the area when Mr. Daffay threatened him after work in the parking lot. Whereupon, Mr. Roberts' testimony was concluded.

**{¶21}** The Attorney General reasoned that the burden of proof had been met with respect to the issue of contributory misconduct. The evidence has shown that Mr. Roberts challenged Mr. Daffay to a fight and willingly engaged in a fight once they were outside. Also, he had the opportunity to avoid the confrontation but he chose not to do so, and he refused to follow his employer's policy against violence.

**{¶22}** The Attorney General asserted that a 15 percent reduction was in line with prior court holdings in *Fiorini*, V82-33081jud (7-26-84) and *Wodzinski*, V2008-31011tc (3-12-10) and accordingly, the Attorney General's Final Decision should be affirmed.

{¶23} The applicant argued that the Attorney General has failed to prove, by a preponderance of the evidence, that Christopher Roberts engaged in contributory misconduct, accordingly a 15 percent reduction of his award is unjust. The applicant asserts Mr. Jollah was a biased witness who was a friend of Mr. Daffay. Mr. Roberts' purpose of speaking with Mr. Daffay was to de-escalate the situation, not engage in a physical altercation. It was not foreseeable that Mr. Daffay would physically attack Mr. Roberts. Although Mr. Daffay had a history of making threatening remarks, he also had never followed through on his prior threats. No credible evidence has been presented that Mr. Roberts accepted a challenge to fight. Finally, Mr. Roberts' only actions were ones of self-defense. Therefore, this panel should reverse the decision of the Attorney General and grant the full amount of the award. Whereupon, the hearing was concluded.

{¶24} R.C. 2743.51(M) states:

    a.    "(M) 'Contributory misconduct' means any conduct of the claimant or of the victim through whom the claimant claims an award of reparations that is unlawful or intentionally tortious and that, without regard to the conduct's proximity in time or space to the criminally injurious conduct, has a causal relationship to the criminally injurious conduct that is the basis of the claim."

{¶25} R.C. 2743.60(F) in pertinent part states:

    a.    "(F) In determining whether to make an award of reparations pursuant to this section, the attorney general or panel of commissioners shall consider whether there was contributory misconduct by the victim or the claimant. The attorney general, a panel of commissioners, or a judge of the court of claims shall reduce an award of reparations or deny a claim for an award of reparations to the extent it is determined to be reasonable because of the contributory misconduct of the claimant or the victim."

{¶26} The Attorney General has the burden with respect to contributory misconduct [exclusionary criteria R.C. 2743.60]. *In re Williams*, V77-0739jud (3-26-79) and *In re Brown* (12-13-79).

{¶27} Black's Law Dictionary Sixth Edition (1990) defines preponderance of the evidence as: "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not."

{¶28} Black's Law Dictionary Sixth Edition (1990) defines burden of proof as: "the necessity or duty of affirmatively proving a fact or facts in dispute on an issue raised between the parties in a cause. The obligation of a party to establish by evidence a requisite degree of belief concerning a fact in the mind of the trier of fact or the court."

{¶29} The credibility of witnesses and the weight attributable to their testimony are primarily matters for the trier of fact. *State v. DeHass* 10 Ohio St. 2d 230, 227 N.E. 2d 212 (1967), paragraph one of the syllabus. The court is free to believe or disbelieve, all or any part of each witness's testimony. *State v. Antill,* 176 Ohio St. 61, 197 N.E. 2d 548 (1964).

{¶30} Under Ohio Law, when determining if the unlawful or intentionally tortious conduct of the victim was causally related to the criminally injurious conduct, foreseeability is a necessary element. *In re Ewing*, 33 Ohio Misc. 2d 48, 515 N.E. 2d 666 (Ct. of Cl. 1987).

{¶31} From review of the file and with full and careful consideration given to the testimony presented at the hearing, we find the applicant engaged in contributory misconduct as defined in R.C. 2743.51(M), thus warranting a 15 percent reduction of his award of reparations.

{¶32} Based upon weighing the testimonial evidence with respect to its probative value and evaluating the information contained in the claim file we believe the applicant voluntarily agreed to participate in a physical altercation and it was foreseeable that he

would be injured although the exact nature of the fight and subsequent injury could not be predicted.

{¶33} The applicant, by his own testimony, related that he had the opportunity to de-escalate the situation by merely walking to his car and leaving. However, he chose to confront Sheku Daffay a person he acknowledges threatened his life on two separate occasions in the past over innocuous incidents and who had threatened his life that day. Mr. Roberts stated he took this threat seriously because he testified he was unable to work after the threat occurred and informed all his co-workers about it. (The applicant failed to inform any manager of the threat in direct violation of WalMart's Work Place Violence Policy). Furthermore, the applicant concedes that Mr. Daffay became "madder and madder" as he voluntarily accompanied Mr. Daffay to a location beyond the scope of the security cameras. At that time, the applicant had the opportunity to retreat but chose not to do so. We find, at that point, the applicant knew a physical confrontation would occur because a crowd of spectators gathered to witness the affray. Whether the applicant specifically challenged Mr. Daffay to fight is of no consequence since his actions clearly demonstrated his intent. Therefore, we find that applicant at the minimum engaged in intentionally tortious if not criminal conduct.

{¶34} We believe this case is analogous to *In re Wodzinski*, V2008-31011tc (3-12-10). In *Wodzinski*, the applicant experienced a history of work related issued with a co-worker, the offender. The applicant agreed to meet this individual off work premises and an ensuing physical altercation occurred. Although the applicant asserted he contemplated no physical confrontation prior to the meeting, the panel determined based upon the location of the meeting and the history of bad blood between the parties involved "it was foreseeable that the possibility of a physical altercation existed." Accordingly, the panel reduced Mr. Wodzinski's award of reparations by 10 percent based on his contributory misconduct.

{¶35} In the case at bar, we find it was foreseeable that a physical confrontation would occur based upon the past and current threats made by Mr. Daffay, the location of the

confrontation and applicant's willingness to engage Mr. Daffay when he had ample opportunity to leave the scene.

{¶36} Accordingly, we find the applicant engaged in contributory misconduct as defined by R.C. 2743.51(M) and affirm the Attorney General's decision pursuant to R.C. 2743.60(F) that the applicant's award of reparations should be reduced by 15 percent.

{¶37} IT IS THEREFORE ORDERED THAT

{¶38} State's Exhibit A is admitted into evidence;

{¶39} The Attorney General's August 19, 2011 decision is AFFIRMED;

{¶40} This order is entered without prejudice to the applicant's right to file a supplemental compensation application, within five years of this order, pursuant to R.C. 2743.68;

{¶41} Costs are assumed by the court of claims victims of crime fund.

_____
NECOL RUSSELL-WASHINGTON
Presiding Commissioner


_____
WILLIAM L. BYERS IV
Commissioner


_____
E. JOEL WESP
Commissioner

ID #I:\Victim Decisions to SC Reporter\Panel Decisions\2012\June - Sept 2012\V2011-60743 Roberts.wpd\DRB-tad

A copy of the foregoing was personally served upon the Attorney General and sent by regular mail to Franklin County Prosecuting Attorney and to:

Filed 6-27-12
Jr. Vol. 2283, Pgs. 59-68
Sent to S.C. reporter 10-18-12